UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------x
MATI GILL,                                            :
                                                      :     **Case No.**
                        Plaintiff,                    :
                                                      :     **COMPLAINT**
            -against-                                 :
                                                      :
ISLAMIC REPUBLIC OF IRAN,                             :
                                                      :
                        Defendant.                    :
------------------------------------------------------x

Plaintiff Mati Gill, by his attorneys, alleges the following upon information and belief:

## NATURE OF THE ACTION

1. This is a civil action pursuant to the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A (hereinafter "FSIA"), against Iran, a designated State Sponsor of Terrorism, for knowingly providing material support to the U.S.-designated Foreign Terrorist Organization ("FTO") (as that term is defined in 8 U.S.C. § 1189 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) Hamas, which perpetrated the terrorist attack in which Plaintiff was injured.

2. The United States officially designated Iran a State Sponsor of Terrorism on January 19, 1984, pursuant to § 6(j) of the Export Administration Act, § 40 of the Arms Export Control Act, and § 620A of the Foreign Assistance Act. This designation has remained in effect since that time.

3. The United States designated Hamas an FTO in 1997. This designation has remained in effect since that time.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter and over the Defendant pursuant to 28

U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

5.  28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## THE PARTIES

**A.  The Plaintiff**

7.  Plaintiff Mati Gill, age 36, is a citizen of the United States.

8.  On April 4, 2008, Mr. Gill was employed as an aide to Israel's then-Public Security Minister, Avi Dichter. As alleged below, on that date, Mr. Gill was shot in a sniper attack (the "2008 Attack") for which Hamas bears responsibility.

9.  On the morning of April 4, 2008, Mr. Gill was accompanying Mr. Dichter on a tour Mr. Dichter was leading for a delegation of the Board of Governors of the Canada-Israel Committee at an observation point inside the State of Israel's borders overlooking the Gaza Strip.

10.  During that visit, the delegation (including Mr. Gill) came under sniper fire coming from within the Gaza Strip that injured Mr. Gill. Mr. Gill was shot in the leg, groin, and surrounding bodily areas.

11.  After being shot, Mr. Gill crawled behind a tour bus out of the line of fire, where he remained until he was evacuated to a hospital in Ashkelon, Israel.

12. As a result of the attack, Mr. Gill has suffered both physical injury and extreme mental anguish and emotional distress.

### B. The Defendant

13. At all times relevant to this Complaint, Defendant Iran is and was a foreign state within the meaning of 28 U.S.C. § 1603 and designated a State Sponsor of Terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)). Iran knowingly provided material support and resources for, and performed actions that caused, acts of extrajudicial killing and acts of international terrorism, within the meaning of 28 U.S.C. § 1605A, including the 2008 Attack in which Plaintiff was injured.

14. The government of Iran is politically and ideologically hostile to the United States and its allies, and has consistently sponsored acts of international terrorism, particularly through its Palestinian proxy, Hamas.[1]

## FACTUAL ALLEGATIONS

**The Islamic Resistance Movement (Hamas)**

15. Several prominent terrorist organizations operate in Palestinian-controlled territory, most notably the Islamic Resistance Movement ("Hamas"). Hamas is an acronym for "Harakat al-Muqawama al-Islamiyya," the Islamic Resistance Movement, which was founded in December 1987.

16. Hamas is a radical Islamist terrorist organization that is committed to the globalization of Islam through violent "Jihad" (holy war).

17. Hamas is formally committed to the destruction of the State of Israel and to

---

[1] As a result of its mission, conduct, and terrorist activities, on January 25, 1995 Hamas was designated a Specially Designated Terrorist ("SDT") by the United States. On October 8, 1997, Hamas was designated an FTO by the United States. On October 31, 2001, pursuant to E.O. 13224, Hamas was designated a Specially Designated Global Terrorist ("SDGT") by the United States.

achieving its objectives by violent means, including acts of terrorism. The Hamas Charter states that Hamas's very purpose is to create an Islamic Palestinian state throughout Israel by eliminating the State of Israel through violent jihad.

18. Hamas has two prime components: its political and social infrastructure; and its paramilitary and terrorist infrastructure known as the Izz al-Din al-Qassam Brigades. Although these two components have separate responsibilities, Hamas operates holistically, with each component working to bolster Hamas's success and enhance its popular support.

19. Consistent with the findings of both Congress and the Executive Branch, financial services and other material support provided to Hamas ultimately inures to the benefit of its criminal, terrorist functions – regardless of whether such support was ostensibly provided to support non-violent activities. Hamas uses its charitable and social infrastructure to, among other things, recruit and train Izz al-Din al-Qassam Brigades cell members and provide salaries for Hamas's terrorist operatives and leadership.

20. Hamas also uses violence, principally suicide bombings, shootings and rocket attacks and other threats of violence to pressure Israel to cede territory to the Palestinian people.

21. Hamas knowingly, willfully, and unlawfully combines, conspires, confederates and agrees to commit numerous acts of international terrorism and other related criminal activity, including murder, attempted murder, solicitation to commit murder, terrorism financing, supporting, aiding and abetting, and conspiring with other terrorists and FTOs, and numerous other acts of international terrorism activities as defined by 18 U.S.C. § 2331 and 18 U.S.C. § 2332 and other related acts of murder, attempted murder, solicitation to commit murder and providing material support to other designated FTOs in violation of the federal criminal code of the United States.

**Hamas's Responsibility for the Attack**

22. Following the attack on Mr. Gill, Hamas's paramilitary and terrorist infrastructure, the Izz al-Din al-Qassam Brigades, issued a statement declaring joint responsibility for the 2008 Attack together with the "Defenders of al-Aqsa Brigade" and boasted specifically about shooting Mr. Dichter's aide (Plaintiff Mati Gill).

23. Hamas also issued an English language communiqué declaring that it (together with the Defenders of al-Aqsa Brigades) was responsible for 2008 Attack. The communiqué was issued through another Hamas-controlled website (http://www.qassam.ps/statement-1006-Al_Qassam_Brigades__Al_Aqsa_protectors_Brigades_targeted_the_convoy_of_the_Zionist_minister_of_interior_security.html).

24. Hamas also released a tape showing gunmen firing automatic weapons at an Israeli army watchtower and a convoy of vehicles near the Gaza Strip's border fence with Israel.

25. On May 4, 2011, the Israeli Security Agency ("ISA") arrested Ayoub Ahmed Abu Karim, a member of the "Defenders of Al Aqsa." According to published reports, during his interrogation Abu Karim told the ISA that the Defenders of Al Aqsa was a Hamas-affiliated group that carried out attacks at Hamas's direction.

26. Abu Karim told the ISA that Fathi Hamad, Hamas's Interior Minister, established and funded the Defenders of Al Aqsa.

27. Additionally, on June 18, 2012, Israel killed the likely shooter in the 2008 Attack, Abdallah Hassan Ahmad Al-Za'anin. In response to his death, Al-Za'anin was hailed by Hamas as a member of its National Security Forces ("NSF"), and a senior delegation from the NSF visited Al-Za'anin's mourners' tent.

**Iran's Material Support for Hamas**

28. Since shortly after the founding of Hamas in 1987, Iran has provided material support and resources to it, including military training, weaponry, bases for training and storing weapons and explosives, safe havens, communications equipment, financial support and services, and transportation.

29. Iran provided this financial support to Hamas pursuant to an agreement reached between Iran and Hamas in the 1980s which still remains in force. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing, hostage taking and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas with financial support to carry out such extrajudicial killings, hostage takings and terrorist attacks.

30. Iran's financial support to Hamas is predicated on the quantity and effectiveness of Hamas's attacks upon Israel. The bulk of the funds Iran forwards to Hamas are used not for peaceable purposes but to bolster Hamas' terrorist actions and suicide missions.

31. Iran gave substantial aid, assistance and encouragement to Hamas, and provided massive financial support to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, hostage taking and international terrorism. Iran did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and providing material support and resources to Hamas.

32. Iran knowingly and willingly conspired, agreed and acted in concert with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing, hostage taking and international

terrorism. Iran did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of its conspiracy with Hamas.

33. According to the United States Country Reports on Terrorism 2008, "Iran remained a principal supporter of groups that are implacably opposed to the Middle East Peace Process. Iran provided weapons, training, and funding to HAMAS … Iran's provision of training, weapons, and money to HAMAS since the 2006 Palestinian elections has bolstered the group's ability to strike Israel."

34. The 2008 Report further found that "The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating and supporting terrorists abroad. The Qods Force provided aid in the form of weapons, training, and funding to HAMAS…"

35. This Court has repeatedly found that Iran is responsible for terrorist acts carried out by Hamas in Israel.

36. Iran's financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

## CLAIM FOR RELIEF

## ASSAULT & BATTERY RESULTING IN PERSONAL INJURY
## UNDER 28 U.S.C. § 1605A(c)

37.  Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

38.  On April 4, 2008, Mati Gill was seriously injured by Hamas, whose operatives committed a willful, wrongful and intentional act constituting both an assault and battery upon his person, causing injury to him.

39.  The Islamic Republic of Iran provided enormous and contemporaneous material support, as the term is defined in § 1605A(h)(3), to Hamas at the time it injured Mati Gill. The terrorist attack was caused and facilitated by Defendant's actions.

40.  As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendant and its agents, Mati Gill was injured and endured physical injury and extreme mental anguish and pain and suffering.

41.  Defendant's conduct was outrageous in the extreme, wanton, willful and malicious, and constituted a threat to the public at large warranting an award of punitive damages pursuant to 28 U.S.C. § 1605A(c).

**WHEREFORE,** Plaintiff demands that judgment be entered in the amount of ten million dollars ($10,000,000) against Defendant for the damages he suffered, including, but not limited to, physical injury and extreme mental anguish and pain and suffering, and thirty million dollars ($30,000,000) against Defendant as punitive damages.

...

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

(a) Accept jurisdiction over this action;

(b) Enter judgment against the Defendant, jointly and severally, in favor of Plaintiff for compensatory damages in amounts to be determined at trial;

(c) Enter judgment against Defendant, jointly and severally, in favor of Plaintiff for punitive damages in amounts to be determined at trial;

(d) Enter judgment against Defendant in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(e) Grant such other and further relief as justice requires.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: December 31, 2015
   Washington, D.C.

OSEN LLC

By  /s/ Peter Raven-Hansen
Peter Raven-Hansen, Of Counsel
(DC Bar No. 215897)
Gary M. Osen
Ari Ungar
Aaron Schlanger
345 Seventh Avenue, 21st Floor
New York, New York 10001
(646) 380-0470

Attorneys for Plaintiff